IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST George E. SMITH, Jr., Attorney at Law.

Supreme Court

*No. 92–0534–D.  Submitted on briefs October 19, 1993.—Decided November 15, 1993.*

(Also reported in 507 N.W.2d 335.)

For George E. Smith, Jr. there were briefs by *George E. Smith, Jr.,* Janesville.

For the Board of Attorneys Professional Responsibility there was a brief by *John O. Olson* and *Braden & Olson,* Lake Geneva.

**PER CURIAM.** *Attorney disciplinary proceeding; attorney's license revoked.*

This is an appeal by Attorney George E. Smith, Jr. from the report of the referee concluding that he engaged in professional misconduct by failing to deposit client funds into his trust account, converting a client's settlement proceeds to his own use, failing to timely deliver those proceeds to the client and to a subrogated party and misrepresenting the matter to the subrogated party, failing to cooperate in the investigation of the Board of Attorneys Professional Responsibility (Board), entering into a business agreement with a client without adequate disclosure and client written consent, converting that client's funds and failing to maintain records of their disbursement and failing to maintain required trust account records and produce them upon request of the Board. As discipline for that professional misconduct, the referee recommended that the court revoke Attorney Smith's license to practice law.

Attorney Smith's contention that the evidence presented in this proceeding does not support the referee's conclusions concerning his misconduct is without merit. The referee's findings of fact support the conclusions that Attorney Smith engaged in egregious misconduct in these matters. Adopting the referee's findings of fact and conclusions of law, we determine that the seriousness of Attorney Smith's misconduct warrants the revocation of his license to practice law in Wisconsin.

Attorney Smith was licensed to practice law in Wisconsin in 1965 and has conducted his practice in Janesville. In 1979, the court revoked his license as discipline for professional misconduct consisting of commingling a client's settlement funds with his own

funds in his law office account and using those funds for his own purposes, failing to provide an accounting of the settlement proceeds to a subrogated insurer, making payment to the insurer and to others with his own funds and other clients' funds he held in trust, violating an order of the circuit court directing that the settlement proceeds be placed in his trust account, using another client's settlement funds for a business he and his wife conducted, failing to keep required trust account records and counseling a client to present false testimony concerning her residence in order to obtain a divorce in another state. *Disciplinary Proceedings Against Smith,* unpublished opinion, August 27, 1979. The court reinstated Attorney Smith's license on May 24, 1985.

When the Board filed its complaint in this disciplinary proceeding, it filed a motion for the temporary suspension of Attorney Smith's license. The complaint alleged two counts of conversion of client funds, three counts of violations of rules relating to the handling of client funds, one count of failing to timely deliver proceeds of a settlement to a client, one count of false representation, fraud and deceit to a party interested in the settlement proceeds, one count of giving false information to the Board, one count of unfair dealing with a client and one count of failing to keep required trust account records.

The referee in this proceeding, Attorney John P. Morris, held a hearing on the motion and recommended to the court that Attorney Smith's license be suspended during the pendency of this disciplinary proceeding, as his continued practice posed a threat to the interests of the public and to the administration of justice. The referee found that Attorney Smith had used client funds for personal purposes, misrepre-

sented the amount of settlement of a client's claim in an attempt to have a subrogated party reduce its claim and failed to maintain adequate records of his client trust account. The court suspended Attorney Smith's license, effective July 17, 1992, pending disposition of this proceeding.

On the basis of evidence presented at a disciplinary hearing, the referee made the following findings of fact. Attorney Smith represented a woman from June, 1989 to January, 1990 on a personal injury claim. A county social services department gave Attorney Smith notice of subrogation for $6,170 it had paid toward the client's medical treatment. The client's medical bills totaled $46,000.

In February, 1990, Attorney Smith settled with the insurer in the amount of $40,000, part of which payment was made to a medical provider that had filed a lien with the insurer. Attorney Smith deposited $21,700 of the balance into his general law office account and $15,000 into a savings account held by a company he and his wife owned. Attorney Smith used $15,400 in the office account for his personal use, including the payment of country club dues and credit card balances.

One year after he had received the settlement funds and deposited them into his accounts, Attorney Smith was contacted by the social services department concerning its subrogation claim. Attorney Smith misrepresented to it that the case remained pending and that the maximum insurance coverage available was $25,000. He also told the department that the client's medical bills far exceeded the subrogated claim and later stated that the case would be settled for less than $25,000. He asked the department to reduce its claim. When the department told him it was aware that the

case had been settled and in what amount, Attorney Smith misrepresented that he was holding the proceeds in a segregated safe deposit box at a bank and that none of the proceeds had been distributed, notwithstanding that he had previously disbursed $3,400 to his client from his business account.

In respect to another matter, the referee found that in December, 1990 Attorney Smith transferred from his trust account to his business account $30,000 he had received on behalf of a client whose financial affairs he was handling. He did likewise with a $10,200 payment he subsequently received on behalf of that client. Attorney Smith, who was designated as payee of the client's social security checks, received two such checks, one in the amount of $5,075 and another in the amount of $1,214, the latter representing his fee for representing the client on a disability claim. Attorney Smith deposited $4,000 of the first check into his business account and retained the remainder. He then drew a check on his business account to the client in the personal injury matter discussed above, which the second client's $4,000 was used to cover.

Attorney Smith contended that he had agreed to renovate an apartment located above his law office for this client and give him the lifetime use of it rent-free. The referee found that there was no written agreement in any recordable form that would protect the client's interest in the agreement.

Concerning the handling of his client trust account, the referee found that Attorney Smith's trust account records for the years 1990 and 1991 consisted of "a few pages of illegible scribbling." Attorney Smith maintained no canceled checks or records from that account and during the Board's investigation was able to retrieve only seven canceled checks issued on that

account. Nonetheless, Attorney Smith certified on his annual statements to the State Bar in 1990 and 1991 that he had complied with the trust account record-keeping requirements imposed by this court's rules.

At the hearing on the motion for temporary suspension of his license to practice law, Attorney Smith produced a release from each of the clients in the matters considered in this proceeding: the first acknowledged receipt of $40,000 in full payment of the client's personal injury claim and recited that the social services department received full reimbursement on its subrogation claim; the second client approved of all actions Attorney Smith had taken on his behalf, released him from all civil and criminal liability, verified all accounts with him and requested that any grievance against him be dismissed. In this regard, the referee found that Attorney Smith knew the second client suffered from long-term alcohol abuse, for which he was under medical care, and the client testified that his memory was adversely affected and that he probably was inebriated when he signed the release. In addition, Attorney Smith knew his personal injury client suffered memory loss and that she testified she did not remember much of the settlement of her personal injury claim. The referee specifically found that both clients "lacked the ordinary mental capacity to make reasonable decisions in their day-to-day lives."

Finally, the referee found that Attorney Smith was not truthful in responding to the Board's inquiry into these matters and presented false information regarding the personal injury client's settlement, the social services department's subrogation claim and the conversion of insurance proceeds.

On the basis of those facts, the referee concluded that Attorney Smith engaged in professional miscon-

duct as follows. Attorney Smith's failure to deposit the personal injury client's settlement checks into his trust account violated SCR 20:1.15(a),[1] his conversion of that client's settlement proceeds to his personal use violated SCR 20:8.4(c),[2] his failure to timely deliver those proceeds to the client and to the subrogated party violated SCR 20:1.15(b),[3] his misrepresentations to the subrogated party violated SCR 20:8.4(c) and his failure to cooperate in the Board's investigation of the matter

[1] SCR 20:1.15 provides:

**Safekeeping property.**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

[2] SCR 20:8.4 provides:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

[3] SCR 20:1.15 provides:

**Safekeeping property.**

. . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

violated SCR 22.07(2).[4] The referee also concluded that Attorney Smith's purported agreement with his client to provide him living quarters was a business transaction that was not fair and reasonable to the client and its terms were not adequately transmitted in writing to the client, violating SCR 20:1.8(a),[5] and that his conversion of that client's funds and failure to maintain records of disbursements of those funds violated SCR 20:8.4(c). Finally, the referee concluded that Attorney Smith violated SCR 20:1.15(e) and (f)[6] by failing to

---

[4] SCR 22.07 provides:

**Investigation.**

. . .

(2)   During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

[5] SCR 20:1.8 provides:

**Conflict of interest: prohibited transactions**
(a)   A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1)   the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2)   the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3)   the client consents in writing thereto.

[6] SCR 20:1.15 provides:

**Safekeeping property.**
. . .

maintain required trust account records and produce those records upon request of the Board.

We reject Attorney Smith's argument that his conduct in these matters did not violate the applicable Rules of Professional Conduct for Attorneys, as the referee had concluded. The record does not support his contention that he properly dealt with the settlement proceeds of his client's personal injury claim and treated fairly and reasonably the client whose finances he was handling and to whom he had agreed to provide

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

(f) Upon request of the Board of Attorneys Professional Responsibility, or upon direction of the Supreme Court, the records shall be submitted to the board for its inspection, audit, use and evidence under such conditions to protect the privilege of clients as the court may provide. The records, or an audit thereof, shall be produced at any disciplinary proceeding involving the attorney whenever material. Failure to produce the records shall constitute unprofessional conduct and grounds for disciplinary action.

a place to live. Attorney Smith's reliance on the releases he obtained from his clients to support his assertion that no one was harmed by his conduct in these matters is unwarranted. Also without merit is his belated argument raised in his reply brief that the disciplinary proceeding must be dismissed because the referee did not comply with the procedural rule, SCR 21.09(5), requiring the filing of a report within 30 days of the conclusion of the disciplinary hearing, as that argument was rejected in *Disciplinary Proceedings Against Conway,* 174 Wis. 2d 832, 841–842, 498 N.W.2d 393 (1993).

We also reject Attorney Smith's objection to the Board's statement of costs incurred in this proceeding. He specifically objected to the costs associated with the Board's counsel but made no specific objection other than to assert that the attorney's hourly rate, which is prescribed by rule of this court, is too high and that the hours claimed to have been spent in the matter too many.

Attorney Smith's professional misconduct warrants the most severe sanction. He converted client funds to his own use and misrepresented facts in an effort to deprive a subrogated insurer of funds to which it was entitled. In view of the fact that his license was previously revoked for similar professional misconduct, Attorney Smith has again demonstrated that he does not deserve the trust of clients, the courts or the public.

IT IS ORDERED that the license of George E. Smith, Jr. to practice law in Wisconsin is revoked, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order George E. Smith, Jr. pay to the Board

of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that George E. Smith, Jr. comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.